UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DARRYL BROWN,

                    Plaintiff,                              Case No. 2:19-cv-140

v.                                                         Honorable Janet T. Neff

TYNNE BEAUDRY et al.,

                    Defendants.

_____/

## <u>OPINION</u>

        This is a civil rights action brought by a former state prisoner under 42 U.S.C.
§ 1983.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996)
(PLRA), the Court is required to dismiss any prisoner action brought under federal law if the
complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks
monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915(e)(2).  The Court
must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972),
and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.
*Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss
Plaintiff's federal claims against Defendant Thompson for failure to state a claim.  The Court will
dismiss Plaintiff's state-law claims against Defendant Thompson without prejudice.  The Court
also will dismiss Plaintiff's conspiracy claim against all Defendants.  Plaintiff's retaliation and
Eighth Amendment claims against Defendants Beaudry, Menard, Bradley, and Veau remain in the
case.

**Discussion**

I.      Factual Allegations

Plaintiff presently is on parole.  The events about which he complains, however, occurred when he was incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF officials:  Correctional Officers Tynne Beaudry, (unknown) Menard, and (unknown) Veau; Custody Officer Colin Bradley; and Resident Unit Manager S. Thompson.

Plaintiff alleges that, in early 2019, he injured his back while lifting weights.  He was medically bed-ridden and scheduled to have surgery.  During this time, health care had to hand-deliver his medications, due to his limited capacity to walk.  Specifically, Plaintiff had to use a walker to get to the bathroom or shower, but he took a long time to get to his destination and could not walk longer distances.  Plaintiff also was provided a medical detail for meals-in, and food service delivered his meals to his housing unit and bunk area.  Plaintiff had no difficulties with first-shift officers ensuring that his food and medications were properly delivered to his bunk.

On March 23, 2019, Defendants Beaudry and Menard, who were officers on second shift, began to force Plaintiff to walk to the unit lobby to get his pain medications and food trays. At about 5:00 p.m. on March 23, Defendant Menard went to Plaintiff's bunk and told him that he needed to come to the lobby to get his food tray if he wanted to eat.  When Plaintiff did not show up in the lobby, Defendant Menard returned to Plaintiff's cell and advised Plaintiff that Defendant Beaudry said that, if Plaintiff did not come to get his tray, the food tray would be sent back. Plaintiff tried to explain that he was in too much pain and could not walk that far until he had his medications.  Menard repeated that Plaintiff had to go to the lobby.

Plaintiff wrote a note to the chow-hall sergeant, Sergeant Bawks, explaining that Defendants Beaudry and Menard were refusing to deliver Plaintiff's food tray. Plaintiff gave the note to another prisoner to deliver. After receiving the note, Sergeant Bawks went to the housing unit and talked to Menard and Beaudry, after which they arranged for a prisoner to deliver the food tray to Plaintiff. When Bawks left the unit, Defendant Menard went to Plaintiff's cell and stated in a threatening tone, "So that's the wa[y] you want to play it huh?" (Compl., ECF No. 1, PageID.5.)

At about 8:30 p.m., when Nurse Maria (not a Defendant) came to deliver Plaintiff's pain medication, Defendants Beaudry and Menard prevented her from bringing Plaintiff's medication to his cell. Defendant Menard came to Plaintiff and told him that, if he wanted his medication, he must report to the lobby. Plaintiff was in severe pain, so he forced himself to walk to the lobby, which is much further away than the bathroom or shower. Plaintiff took a long time to get there, and his injury and pain were exacerbated. When he arrived, Plaintiff asked Nurse Maria if Defendants Beaudry and Menard were the ones who prevented her from delivering his medications. She responded that they were. Beaudry overheard the question and answer and became verbally abusive, ordering Plaintiff to leave the lobby. However, Nurse Maria stopped Plaintiff from leaving while she attempted to address the problem.

Plaintiff filed a Step-I grievance on March 24, 2019. The following day, he learned that Defendant Beaudry had issued a Class-II misconduct charge against him for disobeying a direct order. Defendant Thompson held an administrative hearing on the misconduct charge on March 27, 2019. Plaintiff submitted a written defense, alleging retaliation, and he asked to have the video reviewed. Thompson refused to accept the defense, stating that it was only a Class-II hearing and the defense was unnecessary. Plaintiff was found guilty of the misconduct charge and

given sanctions. A few days later, Defendants Beaudry and Menard had Plaintiff moved to a worse housing unit (A-Unit), instead of to a medical unit (E-Unit), which housed disabled prisoners.

In the interim, on March 25, 2019, at about 8:30 p.m., Nurse Maria came again to deliver Plaintiff's medications. Defendants Beaudry and Menard again refused to allow the nurse to deliver them. Defendant Menard came to Plaintiff's bunk and told him that he needed to walk to the lobby, because Menard was not bringing the nurse to Plaintiff. Plaintiff explained that he was in severe pain and could not walk to the lobby. Menard again told Plaintiff that, if he wanted his medications, he had to go to the lobby. A bit later, Defendant Veau came to Plaintiff's cell and told him the same thing. Defendants Menard and Veau then told the nurse to leave the unit without delivering Plaintiff's pain medications. Plaintiff suffered extreme pain all night and could not sleep. He filed a grievance the next day.

On March 26, at about 8:30 p.m., Defendant Bradley came to Plaintiff's bunk and ordered him to come to the lobby for his medications. Plaintiff tried to explain his problem and asked Bradley to escort the nurse to the unit. Bradley responded, "No, Menard already warned me about you[."] (*Id.*, PageID.8.) Bradley walked away. Bradley returned a few minutes later, advising Plaintiff that, if he did not come to the lobby, Bradley would inform the nurse that Plaintiff had refused his medications. Plaintiff again requested the medications be delivered, and Bradley again refused. Bradley returned for a third time a few minutes later to inform Plaintiff that the next time the nurse came to the unit and Plaintiff did not appear in the lobby, he would be issued a ticket for disobeying a direct order. Plaintiff again experienced a sleepless night due to the pain. He filed a grievance on March 27, 2019.

On April 11, 2019, Plaintiff wrote a complaint to the Deputy Warden of Housing, complaining that the hearing investigator had refused to provide him a copy of the hearing packet

so that he could appeal. Around this time, Plaintiff also wrote a complaint to the Warden's administrative assistant about his medical condition and about being moved to A-Unit in retaliation for his complaints. Shortly thereafter, Plaintiff was moved to E-Unit, where he remained until he was transferred to another facility in late April and subsequently released on parole on May 7, 2019.

Plaintiff alleges that Defendants Menard, Beaudry, Veau, and Bradley conspired to retaliate and retaliated against him for filing grievances or making complaints, in violation of the First Amendment. He also claims that these Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. In addition, Plaintiff contends that Defendant Thompson deprived him of due process in his misconduct hearing. Plaintiff alleges that Defendants also committed the state torts of gross negligence and intentional infliction of emotional distress.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Conspiracy

Plaintiff contends that Defendants Menard, Beaudry, Veau, and Bradley conspired to deprive him of his rights under the First and Fourteenth Amendments. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal

right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510). Recently, in *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985. As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, ___ F.3d ___, No. 18-3373, 2019 WL 3403893, at *11 (6th Cir. July 29, 2019).

Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location (URF). Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employments. The "scope of employment"

limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. Plaintiff therefore does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment. As a consequence, Plaintiff's conspiracy claim under § 1983 is barred under the intracorporate conspiracy doctrine.

## B. Procedural Due Process—Defendant Thompson

Plaintiff alleges that Defendant Thompson deprived him of due process in his Class-II misconduct hearing review. He argues that Thompson refused to review the video and refused to consider Plaintiff's written statement in defense.

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. A minor misconduct

conviction does not implicate the due process clause. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff therefore fails to state a due process claim against Defendant Thompson based on Thompson's allegedly improper handling of the Class-II misconduct proceeding.

Plaintiff raises no other constitutional claim against Defendant Thompson. He argues, however, that Defendant's conduct violated various state tort laws. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant Thompson violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claim against Defendant Thompson, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.*; *see*

*also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction over Defendant Thompson. Accordingly, Plaintiff's state-law claim against Defendant Thompson will be dismissed without prejudice.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendant Thompson will be dismissed for failure to state a claim, under 28 U.S.C. § 1915(e)(2). Plaintiff's state-law claims against Defendant Thompson will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, Plaintiff's conspiracy claim against the remaining Defendants. Plaintiff's retaliation and Eighth Amendment claims against Defendants Beaudry, Menard, Bradley, and Veau remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 20, 2019                          /s/ Janet T. Neff
                                                  Janet T. Neff
                                                  United States District Judge